IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

UNITED STATES OF AMERICA

:

    v.                            : Criminal Case No. DKC 02-0177

:

ROBERT MARK CALIMER

:

**MEMORANDUM OPINION**

Robert Mark Calimer is serving a 229 1/2-month sentence, imposed in November 2002, for multiple bank robberies.  He has filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release).  (ECF Nos. 37; 41).  The Government filed an opposition (ECF No. 46), and Mr. Calimer replied (ECF Nos. 48; 49).[1]  For the following reasons, the motion for compassionate release will be granted.

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed[.]"  18 U.S.C. § 3582(c) (2018).  This general rule is subject to certain exceptions, including the compassionate release provision, which allows the Bureau of Prisons ("BOP") to seek a modification of a prisoner's sentence.  *See id*. § 3582(c)(1)(A).  Under the First Step Act of 2018, the compassionate release provision was modified to allow

---

[1] The motions to seal (ECF Nos.  42; 45; 47) are GRANTED. The personal medical information should remain private, except as recited herein.

prisoners to seek a sentencing reduction directly from the court.  The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Judge Hollander described the next step of the analysis:

> Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.
>
> U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):
>
> > 1. Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> >
> > (A) Medical Condition of the Defendant.—
> >
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > **(I) suffering from a serious physical or medical condition**,
> >
> > (II) suffering from a serious functional or cognitive impairment, or

3

(III) experiencing deteriorating physical or mental health because of the aging process,

that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

On March 26, 2020, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, directing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D.N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). The Attorney General issued a second memorandum to Carvajal on April 3, 2020, finding "the

> requisite emergency . . . ." *Hallinan*, 2020 WL
> 3105094, at *9.  Notably, the April 3 memorandum "had
> the effect of expanding the [BOP's] authority to grant
> home confinement to any inmate...." *Id.*
>
> The Department of Justice ("DOJ") has recognized
> the unique risks posed to inmates and BOP employees
> from COVID-19.  The DOJ recently adopted the position
> that an inmate who presents with one of the risk
> factors identified by the CDC should be considered as
> having an "extraordinary and compelling reason"
> warranting a sentence reduction.  *See also* U.S.S.G.
> § 1B1.13 cmt. n.1(A)(ii)(I).

*United States v. Kess*, No. 14-cr-480-ELH, 2020 WL 3268093, at

*3-4 (D.Md. June 17, 2020) (footnote omitted).

Mr. Calimer argues that he meets the "extraordinary and

compelling reasons" because his underlying medical conditions

make him especially vulnerable to COVID-19.  He asserts that he

does not pose a danger to the community, and the § 3553(a)

factors warrant release.

He concedes that his offense conduct was extremely serious,

but argues that the bank robberies were the product of acute

drug and gambling addiction.  He has participated in educational

courses and programming that will help reduce his likelihood of

recidivism.  He has only 16 months left to serve, in any event.

He proposes to live with family in Pennsylvania who will assist

him with his medical needs.

The Government counters that, even if the underlying

medical conditions make Mr. Calimer more susceptible to serious

illness from COVID-19, there is no enhanced risk at the facility

where he is currently housed.[2]  Moreover, the Government suggests that a generalized risk is insufficient and a prisoner must show something with respect to himself in particular.  It also suggests that the risk may actually be higher in Pennsylvania, where he proposes to reside.

Furthermore, the Government maintains that the § 3553(a) factors do not support release.  Beginning with the facts of the multiple bank robberies, his lengthy criminal history, and his poor conduct while in prison, it contends that Mr. Calimer has yet to manifest any attribute meriting release, that none of the goals of sentencing have been met, and that continued incarceration is necessary to protect the public.

There is much force to the Government's argument.  The amount of the decrease being sought is minimal, however, and given the current situation, it is unlikely that significant programming will be available for Mr. Calimer in the remaining months of his sentence.  The combination of factors, age, health conditions, COVID-19 risk, as well as length of time already served, justify granting compassionate release to Mr. Calimer.

Pursuant to 18 U.S.C. § 3624 (d), the BOP is required to provide transportation to the place of conviction or verified residence.   The proposed residence in Pennsylvania will also

---

[2] In a supplement, Mr. Calimer reports that case statistics for Victorville have gone up.  (ECF No. 50).

require the probation office in Maryland to coordinate with its counterpart in Pennsylvania, to assess the proposed residence and put in place appropriate supervision.  Accordingly, the court will defer entry of the amended judgment until it receives notification that a release plan is ready for implementation.


                            /s/
                 _____
                 DEBORAH K. CHASANOW
                 United States District Judge
